IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


RICHARD CATRAMBONE, SR.,      )
                              )
            Appellant,        )
                              )
    v.                        )   No. 13 C 3877
                              )
THOMAS ADAMS,                 )
                              )
            Appellee.         )


MEMORANDUM OPINION AND ORDER

A bankruptcy court held that Richard Catrambone, Sr. ("Catrambone") cannot discharge a debt he owes to his former business partner, Thomas Adams ("Adams"), based on two exceptions to discharge in the Bankruptcy Code.

On appeal, Catrambone seeks reversal of the bankruptcy court's judgment on two separate grounds: (1) Adams should have been confined to the evidence he disclosed during discovery, which was insufficient as a matter of law to exclude Catrambone's debt to Adams from discharge in bankruptcy and (2) Adams failed to establish that the debt owed to him was non-dischargeable even if the bankruptcy court's evidentiary ruling was not an abuse of discretion.

Catrambone's arguments are not persuasive.  I affirm
the bankruptcy court's judgment for the reasons stated
below.

I.

On December 2, 2002, Adams filed suit against
Catrambone and Great Lakes Building Materials, Inc. ("Great
Lakes")--a business in which Adams and Catrambone each held
a fifty percent interest--alleging violation of the Illinois
Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*,
breach of fiduciary duty, and tortious interference with
prospective economic advantage.[1]  *See Adams v. Catrambone*,
No. 02 C 8700 (N.D. Ill.).

On April 23, 2003, the district court dismissed Adams's
suit for failure to state a claim upon which relief could be
granted.  *Id.* at Dkt. No. 20.  Adams appealed to the Seventh
Circuit, which reversed and remanded for further
proceedings.  *Adams v. Catrambone*, 359 F.3d 858 (7th Cir.
2004).

On remand, the parties agreed that a jury would decide
liability while a magistrate judge, presiding with consent

---

[1] Illinois courts use the following terms interchangeably: tortious
interference with prospective advantage; tortious interference with
prospective business relationships; and tortious interference with
prospective business expectancies.  *Delphi Indus., Inc. v. Stroh Brewery
Co.*, 945 F.2d 215, 217 n.1 (7th Cir. 1991).

of the parties, would calculate damages in the event of a jury verdict for Adams on one or more of his claims.

On March 23, 2007, following a four day trial, a jury found in favor of Adams on his breach of fiduciary duty and loss of prospective economic advantage claims.[2] ROA part 3 at 20-21.[3] The jury also determined that punitive damages were appropriate because Catrambone's misconduct was willful and wanton. *Id*. at 21. One of the central issues in this appeal is whether the jury's findings, which are entitled to preclusive effect, are sufficient to exclude the resulting monetary judgment against Catrambone from discharge in bankruptcy.

After conducting a two day bench trial, the district court issued findings of fact and conclusions of law on damages. The court determined that Adams was entitled to $575,507.37 in damages for his breach of fiduciary duty and tortious interference with prospective economic advantage claims against Catrambone.[4] *Adams v. Catrambone*, No. 02 C 8700, 2010 WL 3893800, at *6 (N.D. Ill. Sept. 30, 2010).

---

[2] The jury also found in favor of Adams on his claim against Great Lakes under the Illinois Wage Act, but this portion of the jury's verdict is not at issue in this appeal.
[3] All citations to the record in this decision follow the naming and numbering conventions used in the parties' briefs. The record on appeal ("ROA") appears at Dkt. Nos. 1-3 to 1-6 and 11-1 to 11-12.
[4] The district court also determined that Adams was entitled to damages from Great Lakes in the amount of $84,028.00 for violating the Illinois Wage Act.

The district court entered a judgment reflecting this damages award on the same day. ROA part 3 at 23.

Approximately one year later, on September 28, 2011, Catrambone filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See In re Catrambone*, No. 11 B 39311 (Bankr. N.D. Ill.). On December 23, 2011, Adams filed an adversary complaint seeking a determination that the $575,507.37 judgment against Catrambone was non-dischargeable under Sections 523(a)(2), (a)(4), and/or (a)(6) of the Code. *See Adams v. Catrambone*, No. 11 AP 02673 (Bankr. N.D. Ill.) (the "discharge exception proceeding"). Adams attached three documents to his adversary complaint: (1) a copy of Adams's complaint in the litigation resulting in the $575,507.37 judgment against Catrambone; (2) a copy of that judgment; and (3) the district court's findings of fact and conclusions of law regarding damages. ROA part 1 at 17-18.

On March 8, 2013, the parties submitted a pre-trial statement in the discharge exception proceeding. Catrambone argued below—and reiterates at length in this appeal—that Adams disclosed for the first time in his pre-trial submission that he intended to introduce evidence beyond the three documents attached to his complaint. The specific documents Catrambone objected to were (1) the jury

4

instructions and jury verdict from the previous *Adams v. Catrambone* litigation and (2) an affidavit signed by Catrambone and submitted in opposition to Adams's previously filed motion for summary judgment, which the bankruptcy court had denied.[5] Catrambone also objected to Adams's intention to testify in support of his claims.

On March 18, 2013, when the discharge exception proceeding was originally set for trial, Catrambone argued against the admission of the documents and testimony referenced above. The bankruptcy court agreed that Adams's discovery responses were deficient. As an alternative to excluding highly relevant evidence, the court reset the trial date to March 27, 2013 to give Catrambone additional time to review the evidence or engage in further discovery.

On March 27, 2013, Catrambone urged the bankruptcy court to reconsider its decision to admit the evidence listed in Adams's pre-statement. The court reiterated that it would consider granting Catrambone additional time for discovery. However, Catrambone failed to explain what he intended to accomplish through more fact discovery or why it

---

[5] Catrambone argues against the admission of three documents in his appellate brief: the jury instructions, jury verdict, and judgment from the district court litigation. Appellant's Br. 24. However, Catrambone admits elsewhere that Adams attached a copy of the judgment to his adversary complaint. *Id.* at 6. As noted in Adams's response brief, the three documents Catrambone objected to in the bankruptcy court were the jury instructions, jury verdict, and Catrambone's own affidavit. *See* Appellee's Br. 6-10 (defending admission of all three documents).

would be prejudicial to try the case based on the evidentiary record disclosed in Adams's pre-trial submission.  Accordingly, the bankruptcy court denied Catrambone's motion for reconsideration and moved forward with trial.  Tr. of Hr'g on Mar. 27, 2013 ("Mar. 27 Hr'g") at 16:14-16.

At trial, Adams introduced eight exhibits[6] and testified for approximately five minutes in support of his claims.  Catrambone's counsel did not cross examine Adams and moved instead for a directed finding on all three discharge exceptions at issue.  The bankruptcy court took Catrambone's motion under advisement.  Catrambone then declined to present any evidence in support of his defense.

On April 11, 2013, the bankruptcy court held that Adams had established an exception to discharge of the $575,507.37 judgment against Catrambone under Sections 523(a)(4) and (a)(6), but not under Section 523(a)(2)(A) for debts resulting from false pretenses, a false representation, or actual fraud.  *Adams v. Catrambone*, No. 11 AP 02673, Dkt. No. 69 ("Op.") (Bankr. N.D. Ill. Apr. 10, 2013).

---

[6] As detailed in the bankruptcy court's opinion, Adams introduced five documents from the litigation resulting in a judgment against Catrambone: the complaint, jury instructions, jury verdict, judgment, and judge's opinion on damages.  Adams also submitted three documents from bankruptcy discharge proceeding: the complaint, answer, and Catrambone's affidavit.

On appeal, Catrambone argues that the bankruptcy court abused its discretion by admitting evidence that was not disclosed during discovery and erred in holding that the monetary judgment against him is non-dischargeable under Sections 523(a)(4) and (a)(6).

I have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

II.

The Bankruptcy Code "limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 287 (1992) (internal quotation omitted). The non-dischargeable debts listed in Section 523(a) of the Bankruptcy Code reflect "circumstances where strong, special policy considerations, such as the presence of fault, argue for preserving the debt, thereby benefiting, for example, a typically more honest creditor." *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1761 (2013).

The two exceptions at issue in this appeal exclude from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity" or "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. §§ 523(a)(4), (a)(6).

I must affirm the bankruptcy court's judgment if
Catrambone's debt to Adams is non-dischargeable under <u>either</u>
Section 523(a)(4) or (a)(6).

A.

Catrambone's first argument for reversal of the
bankruptcy court's judgment is that Adams should have been
confined to the evidence he disclosed during discovery,
which Catrambone argues was insufficient as a matter of law
to establish that the debt at issue was non-dischargeable.

I will assume (without deciding) that Adams violated
his discovery obligations by disclosing evidence he intended
to use at trial for the first time in his pre-trial
statement.  *See* Fed. R. Bankr. P. 7026 (incorporating Fed.
R. Civ. P. 26 by reference).  Having made this assumption in
Catrambone's favor, I must now decide whether the bankruptcy
court abused its discretion by admitting evidence that Adams
should have disclosed during discovery.  *See* Fed. R. Civ. P.
26(a)(1)(A)(ii).

"The determination of whether a Rule 26(a) violation is
justified or harmless is entrusted to the broad discretion
of the district court."  *Mid-America Tablewares, Inc. v.
Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996).
"A district court need not make explicit findings concerning
the existence of a substantial justification or the

8

harmlessness of a failure to disclose." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (internal quotation omitted).  When deciding whether to exclude evidence that should have been disclosed during discovery, a court should consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.*  A court does not abuse its discretion when it chooses "an option that was among those from which we might expect a district court reasonably could choose." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 739 (7th Cir. 1998).

The bankruptcy court admitted evidence that Adams disclosed for the first time in his pre-trial statement only after postponing the trial to give Catrambone an opportunity to review the evidence and determine whether he needed more discovery; asking Catrambone to explain what he intended to accomplish through additional fact discovery; and concluding that Catrambone's prejudice argument was simply an attempt to prevail based on draconian application of procedural rules governing discovery rather than on the merits

The following statement shows that the bankruptcy court considered the factors that should guide a court's exercise of discretion when deciding whether to exclude evidence based on a discovery violation:

> And, again, if you think you can actually accomplish something by discovery or by anything else, I'll consider a request for more time, because I want this case decided properly, not based on what lawyer did the best job on the motion for summary judgment or in advance of trial. I want to decide it...on the merits. And I suspect all the time in the world won't help you. And the prejudice issue you're really citing is just the fact that you were hoping to prevail on, basically, by sharp practice, rather than on the merits.

Mar. 27 Hr'g. at 11:9-22.

In short, the bankruptcy court gave Catrambone ample opportunity to explain why additional fact discovery was necessary or, equivalently, what prejudice would result from admitting evidence that Adams failed to disclose until ten days before trial. Catrambone never answered the court's questions or sought leave to take additional discovery. In fact, Catrambone's counsel came close to admitting that he would <u>not</u> have taken additional discovery even if Adams had complied with his discovery obligations in the first instance. *See e.g.*, Mar. 27 Hr'g. at 6:16-17 ("[W]e might have taken more discovery. Maybe we might not have."); Tr. of Hr'g on Mar. 18, 2013 ("Mar. 18 Hr'g") at 7:11-14 ("And,

yes, there is prejudice because maybe I would have taken a deposition.  Maybe I would have done more discovery if they had disclosed what they were supposed to have disclosed.").

In light of this record, I find that the bankruptcy court did not abuse its discretion by concluding that it was harmless (i.e., non-prejudicial) to admit evidence and testimony that Adams failed to disclosure during discovery.  Accordingly, Catrambone's first argument for reversal of the bankruptcy court's judgment fails.

B.

Catrambone's second argument for reversal of the bankruptcy court's judgment is that Adams's evidence, considered as a whole, fails to establish that the debt owed to him was non-dischargeable under Section 523(a)(4) or (a)(6) of the Bankruptcy Code.

The bankruptcy court's factual findings—most of which are based on the preclusive effect of a jury's earlier findings—are controlling unless clearly erroneous.  In contrast, whether the factual record satisfies the requirements of Section 523(a)(4) or (a)(6) is a question of law subject to *de novo* review.  *In re Roberson*, 999 F.3d 1132, 1137 (7th Cir. 1993) ("whether [debtor's] circumstances meet [the] test [for undue hardship exception

in Section 523(a)(8) is] a question of law subject to *de novo* review).

      1. Section 523(a)(4) discharge exception

Section 523(a)(4) exempts from discharge in bankruptcy any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Only the subpart of this provision concerning "defalcation while acting in a fiduciary capacity" is at issue in this appeal.

Applying the doctrine of collateral estoppel,[7] the bankruptcy court held that a jury already found Catrambone to have engaged in conduct constituting defalcation while acting as a fiduciary. Accordingly, the bankruptcy court entered judgment for Adams in the adversary proceeding on the ground that the $575,507.37 judgment against Catrambone was non-dischargeable under Section 523(a)(4).

On appeal, Catrambone argues that the jury verdict against him does not establish (1) the existence of a fiduciary relationship under Section 523(a)(4) or (2) that Catrambone acted with the requisite state of mind to

---

[7] Collateral estoppel or "issue preclusion" refers to "the effect of a judgment in foreclosing litigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action." *LaSalle Nat'l Bank v. County of DuPage*, 856 F.2d 925, 930 n.2 (7th Cir. 1988).

establish an exception to discharge based on defalcation. Appellant's Br. 29-36.

a. Catrambone's fiduciary duty to Adams

"The existence of a fiduciary relationship under section 523(a)(4) [of the Bankruptcy Code] is a matter of federal law." *In re Berman*, 629 F.3d 761, 767 (7th Cir. 2011). Although "[b]ankruptcy law depends on, and implements, entitlements defined by state law...which of these entitlements is subject to discharge or a trustee's avoiding power is beyond state control." *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003) (internal citations omitted). Thus, a jury's finding that Catrambone breached a fiduciary duty owed to Adams under state law does not establish, *ipso facto*, the existence of a fiduciary relationship in the present context.

The defining feature of a fiduciary relationship for purposes of Section 523(a)(4) is "a difference in knowledge or power between fiduciary and principal which...gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994) (internal citation omitted) (distinguishing between "situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking" and relations between equals). The following relationships are

paradigmatic examples of fiduciaries in a position of
"ascendancy" over a principal: attorney and client; director
and shareholder; and managing partner and limited partner.
*Id.*

The jury that found Catrambone in breach of a fiduciary
duty owed to Adams was instructed that Adams could establish
the existence of a fiduciary relationship by proving either
of the following by a preponderance of the evidence:

1. [t]hat Thomas Adams and Richard Catrambone were
   partners, meaning that they were persons who
   had joined together or agreed to join together
   in a business or venture for their common
   benefit, each contributing property, money or
   services to the business or venture and having
   a community of interest in any profits; or

2. [t]hat Thomas Adams is a shareholder of record
   of Great Lakes Building Materials, Inc.

ROA part 3 at 9.

The jury obviously applied a test for determining the
existence of a fiduciary relationship that differs from the
"ascendancy" test applicable in a Section 523(a)(4)
discharge exception proceeding. Accordingly, the jury's
verdict for Adams on his breach of fiduciary duty claim
against Catrambone is not dispositive.

In order to prevail on his Section 523(a)(4) claim,
Adams needed to establish by a preponderance of the evidence
that Catrambone's superior knowledge or power gave him a

position of "ascendancy" over Adams.  Adams attempted to
meet this burden by testifying for approximately five
minutes about the nature of his business relationship with
Catrambone.  Catrambone's counsel did not cross examine
Adams.  Catrambone also declined to testify about his
business relationship with Adams.  Although Catrambone
signed an affidavit denying that he owed Adams a fiduciary
duty, this declaration contained no supporting facts and was
not, in any event, admissible to establish the truth of the
matters asserted.  *See Montgomery v. Am. Airlines, Inc.*, 626
F.3d 382, 389 (7th Cir. 2010) ("mere conclusory allegations
do not constitute evidence").  In short, Catrambone went for
broke on two theories (1) that Adams should not be allowed
to admit evidence beyond the three documents attached to
this adversary complaint and (2) that the jury's findings
were insufficient for Adams to establish an exception to
discharge of the debt owed to him.

The bankruptcy court found, based on Adams's unrebutted
testimony, that Catrambone "had sole access to the computer
with financial statements [at Great Lakes]," which was
"further evidence of ascendancy as required by [Section]
523(a)(4)."  Op. at 3.  There is nothing in the record
suggesting that this factual finding was clearly erroneous.
Therefore, the relevant question on appeal is whether this

finding is sufficient, as a matter of law, to establish that Catrambone was in a position of "ascendancy" over Adams.

Seventh Circuit precedent provides ample support for the bankruptcy court's conclusion that Catrambone's superior knowledge or power was sufficient to impose upon him a fiduciary duty to Adams. The debtor in *In re Frain*, 230 F.3d 1014 (7th Cir. 2000), was a fifty percent shareholder who "was responsible for the day-to-day business decisions of the corporation, giving him a natural advantage over the other two shareholders in terms of knowledge of the corporation's finances." *Id*. at 1017. However, "Frain's superior knowledge of day-to-day operations was not sufficient in itself to establish a position of ascendancy" because the other shareholders retained "access to knowledge and information." *Id.* at 1017-18 (holding that structure of partnership agreement giving Frain "ultimate power over both his own employment and the direction of the corporation" placed him in position of "ascendancy" over other shareholders). Here, Adams established that he could not even access basic information about day-to-day business activities--much less financial records--at Great Lakes. Adams was responsible for sales while Catrambone retained "sole access" to the computer with financial information about the business. Thus, Adams was in a less powerful

position that the minority shareholders in *Frain* whose
enjoyed at least "reasonably similar access" to information.
*Id.* at 1017.

The nominally equal partnership between Catrambone and
Adams in which each party held a fifty percent interest in
Great Lakes does not preclude the existence of a fiduciary
duty.  The "ascendancy" test looks to economic realities
rather than labels.  Catrambone and Adams were not equals
with respect to their knowledge and control of the business.
*Cf. In re Woldman*, 92 F.3d 546 (7th Cir. 1996) (finding no
fiduciary relationship between creditor and debtor because
there was no substantial inequality in power or knowledge
between attorneys who agreed to split contingent fee
equally).  Only Catrambone had access to the computer where
critical information about Great Lakes was maintained.
Although the partnership was nominally equal, Adams's
limited access to information rendered him "incapable of
monitoring [Catrambone's] performance of his
undertaking[s]." *Marchiando*, 13 F.3d at 1116.  This
inequality in knowledge and power placed Catrambone in a
position of "ascendancy" and  imposed a corresponding
fiduciary obligation to Adams.

b. State of mind requirement for "defalcation"

Having concluded that Catrambone owed a fiduciary duty to Adams, I must now determine whether the jury's factual findings are sufficient to conclude that Catrambone acted with the requisite state of mind for defalcation. Appellant's Br. 33-36.  Notably, Catrambone does <u>not</u> challenge the *actus reus* portion of the bankruptcy court's opinion holding that Catrambone's misconduct–i.e., insider dealing, diversion of money and profit, and wrongful termination--rises to the level of defalcation under Section 523(a)(4).  *See Bullock*, 133 S.Ct. at 1758-59 (describing competing interpretations of the word "defalcation" in the federal bankruptcy statute since its introduction in 1867, but declining to define the term); *see also Black's Law Dictionary* 479 (9th Ed. 2009) (defining "defalcation" as "failure to meet one's obligations" or "a nonfraudulent default").  Catrambone challenges only whether the jury's finding are sufficient to establish that he acted with a culpable state of mind.

Catrambone's *mens rea* argument is based on the Supreme Court's recent holding that "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term ["defalcation"] requires an intentional wrong."  *Bullock*, 133 S.Ct. at 1759.  A debtor acts with the requisite state of mind when he or she acts with "knowledge

of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id*. at 1757 (resolving circuit split over whether "defalcation" includes scienter requirement).[8] The Supreme Court vacated and remanded in *Bullock* because the Eleventh Circuit applied an "objective reckless[ness]" standard in determining whether the debtor engaged in defalcation while acting as a fiduciary. *Id.* at 1761 (describing standard articulated in *Bullock* as "heightened" relative to objective recklessness test). Note that *Bullock* addressed only the state of mind requirement for defalcation; the Court did decide what conduct constitutes "defalcation" as such. *Id.* at 1759.

In light of *Bullock*, I must determine (1) whether the standard for defalcation applied by the bankruptcy court is consistent with *Bullock* and, if not, (2) whether the jury's findings nonetheless establish that Catrambone acted with knowledge of--or gross recklessness with respect to--the improper nature of his behavior while acting as a fiduciary.

In describing the standard for "defalcation" under Section 523(a)(4), the bankruptcy court stated that "[c]ourts use an objective standard to determine defalcation; no intent or bad faith is required." Op. at 4 (citing *Strube Celery & Vegetable Co., Inc. v. Zois*, 201

---

[8] The bankruptcy court granted judgment for Adams on April 10, 2013. *Bullock* was decided on May 13, 2013.

B.R. 501, 506 (Bankr. N.D. Ill. 1996)).  The bankruptcy

court also stated that Seventh Circuit precedent on

defalcation "requires more than mere negligence, but less

than fraud."  *Id.* (citing *In re Kusmierek*, 224 B.R. 651

(Bankr. N.D. Ill. 1998)).[9]

The bankruptcy court accurately stated Seventh Circuit

precedent at the time it entered judgment for Adams based on

the Section 523(a)(4) exception to discharge.  *See Berman*,

629 F.3d at 765 n.3 ("We have held that defalcation requires

something more than negligence or mistake, but less than

fraud." (citing *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th

Cir. 1994)).  I must now decide the extent to which *Bullock*

abrogates Seventh Circuit precedent on the mental state

required to establish non-discharge of a debt resulting from

defalcation.

In *Bullock*, the Supreme Court invoked a canon of

construction, *noscitur a sociis*, that interprets a statutory

term with reference to neighboring words.  133 S.Ct. at

1759-60; *see also Maracich v. Spears*, 133 S.Ct. 2191, 2201

(2013) (defining *noscitur a sociis* as "the interpretive rule

that words and people are known by their companions"

---

[9] Catrambone states in his brief that "[a]n objective standard is used
to determine a defalcation, and intent or bad faith is not required."
Appellant's Br. 33 (citing *In re Pawlinski*, 170 B.R. 380, 389 (Bankr.
N.D. Ill. 1994)).  If the bankruptcy court applied the wrong legal
standard in light of *Bullock*, Catrambone committed the same error in his
brief.  Adams, for his part, relies on the same statement of law and
fails to cite—much less discuss—*Bullock*.  Appellee's Br 12-13.

(internal quotation omitted)).  Section 523(a)(4) exempts
from discharge, *inter alia*, debts resulting from "fraud or
defalcation while acting in a fiduciary capacity."  As
neighboring statutory terms, "fraud" and "defalcation"
should have similar state of mind requirements under the
*noscitur a sociis* canon.  It is settled law that the "fraud"
exception requires a showing of wrongful intent.  *Neal v.
Clark*, 95 U.S. 704, 709 (1878).  Therefore, the Supreme
Court reasoned that an equivalent showing is required when a
creditor seeks to exclude a debt from discharge based on the
"defalcation" exception.  133 S.Ct. at 1760 (noting that
neighboring term "larceny" in Section 523(a)(4) provides
additional support for this reading).  *Bullock* results in a
uniform interpretation of the Section 523(a)(4) discharge
exceptions in which a showing of wrongful intent is required
with respect to each form of misconduct.

The Seventh Circuit's precedents, which draw a
distinction between "fraud" and "defalcation," are not
consistent with *Bullock*: "Defalcation can be distinguished
from fraud and embezzlement on the basis that subjective,
deliberate wrongdoing is <u>not</u> required to establish
defalcation, though some degree of fault is required."
*Berman*, 629 F.3d at 765 n.3 (emphasis added); *see also id.*
("defalcation requires something more than negligence or

mistake, but less than fraud"). *Bullock* holds that "defalcation"—just like "fraud"—requires a deliberate or intentional wrong and "include[s] as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent." 133 S.Ct. at 1759-60 (describing degree of recklessness akin to actual knowledge of wrongdoing).

The bankruptcy court followed Seventh Circuit precedent, but applied a standard for "defalcation" that does not survive *Bullock*. Accordingly, I must now decide in the first instance whether the jury's findings are sufficient to establish that Catrambone acted with the requisite state of mind when engaging in defalcation. *See Marchiando*, 13 F.3d at 1114 ("When the record permits only one finding, the court of appeals can make the finding itself, without remand to the district court."). My review is limited to the evidentiary record before the bankruptcy court.

The jury's finding on punitive damages is dispositive as to whether Catrambone committed a deliberate or intentional wrong. The district court instructed the jury as follows on punitive damages:

> If you find that the conduct of Richard Catrambone
> was willful and wanton and proximately caused
> injury to Thomas Adams, and if you believe that
> justice and the public good require it, you may,
> in addition to any other damages to which you find
> Thomas Adams entitled, determine that he is
> entitled to an award of damages in an amount which
> will serve to punish Richard Catrambone and to
> deter him and others from similar conduct.

ROA part 3 at 15. The court defined "willful and wanton" conduct as "a course of action which shows actual or deliberate intention to harm." *Id*.

The jury found that an award of punitive damages was appropriate with respect to Adams's breach of fiduciary duty and loss of prospective economic advantage claims. ROA part 3 at 19. In other words, the jury found that Catrambone's actions showed an "actual or deliberate intention to harm" Adams.

I conclude based on a *de novo* review of the evidentiary record before the bankruptcy court that Catrambone's intent when committing acts that constitute defalcation was resolved during prior litigation between the parties. *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011) ("[w]hether the issue of intent was litigated and resolved in [prior litigation between the parties], as required for application of collateral estoppel, is question of law"). This issue cannot be relitigated. *See In re Catt*, 368 F.3d 789, 792 (7th Cir. 2004) (concluding that finding of fraud made

against debtor in state court proceeding could not be relitigated in later bankruptcy proceeding under collateral estoppel principles). The preclusive effect of the jury's finding that Catrambone intended to harm Adams satisfies the state of mind requirement announced in *Bullock*. I therefore affirm the bankruptcy court's holding that the judgment owed to Adams is non-dischargeable under Section 523(a)(4) of the Bankruptcy Code.

### 2. Section 523(a)(6) discharge exception

The bankruptcy court also determined that Adams satisfied the exception to discharge for debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6); *see also* 11 U.S.C. § 101(15) (defining "entity" to include "person[s]"). On appeal, Catrambone argues that the jury's findings were not sufficient to satisfy the "willful and malicious injury" standard. Appellant's Br. 39.

"[N]ondischargeability [under Section 523(a)(6)] takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). The Seventh Circuit noted recently that "courts are all over the lot in defining th[e] phrase ['willful and malicious'] in section 523(a)(6)."

*Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322-24 (7th Cir. 2012) (collecting cases). However, the competing definitions of "willful and malicious" represent a "pseudo-conflict" where "different legal definitions of the same statutory language...probably don't generate different outcomes." *Id*. at 322-23. "[A]ll courts would agree that a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Id*. at 324.

Catrambone's appeal does not require a careful parsing of the phrase "willful and malicious injury" because the jury's finding that his actions were "willful and wanton"--i.e., that Catrambone's course of conduct showed an "actual or deliberate intention" to harm Adams--plainly satisfies the Section 523(a)(6) standard for excluding a debt from discharge. ROA Part 3 at 21. The jury's findings establish that Catrambone injured Adams "knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act[ions]." *Jendusa-Nicolai*, 677 F.3d at 324; *see also In re Greene*, 87 F.2d 951 (7th Cir. 1937) (holding that any judgment obtained because of willful and wanton misconduct "must be said to

have been done 'willfully and maliciously' as contemplated by the [bankruptcy] statute").

The Seventh Circuit's holding in *Jendusa-Nicolai* also supports the conclusion that a debt with a punitive damages component is non-dischargeable under Section 523(a)(6). The debtor in *Jendusa-Nicolai*--who owed a $3.4 million civil judgment for battery, false imprisonment, intentional infliction of emotional distress, and loss of consortium-- argued that the $1.5 million punitive damages component of the debt was for punishment and deterrence rather than for "willful and malicious injury." *Id*. at 323. The Seventh Circuit rejected this distinction because "punitive damages are a debt owed by a tortfeasor to his victim, and in this case they are a debt consequent upon a willful and malicious injury." *Id*. The same logic applies to Catrambone's appeal. The $575,507.25 judgment against him reflects both actual damages for the willful and malicious injury he inflicted on Adams and punitive damages consequent to this debt. Therefore, the entire judgment is non-dischargeable in bankruptcy based on the exception in Section 523(a)(6) of the Bankruptcy Code for debts resulting from "willful and malicious" injuries.

IV.

I affirm the bankruptcy court's judgment that Catrambone cannot discharge the $575,507.37 debt he owes to Adams for the reasons stated above.

ENTER ORDER:

_____

**Elaine E. Bucklo**
United States District Judge

Dated: September 10, 2013